[No. 23180. Department One. October 29, 1931.]

O. W. ACKERSON *et al., Respondents,* v. HAMA HAMA
LOGGING COMPANY *et al., Appellants.*[1]

*Edwin H. Flick* and *Herald A. O'Neill,* for appellants.

*Wm. Martin,* for respondents.

HERMAN, J.—Plaintiffs brought this suit for damages to their temporary fishtrap located in Apple Tree cove on Puget Sound. The tug Norene, belonging to defendants White, Clough and Ryan, was towing a large raft of logs. The captain of the tug went to sleep, and the tug ran aground. The tides carried the raft of logs around and into the fishtrap, thereby breaking and bending over a number of piles having eight inch butts

[1]Reported in 4 P. (2d) 638.

and five inch tops. The trap was made of chicken wire stretched between these piles.

Defendants contended the damage was slight; plaintiffs claimed that the breaking and bending of the piles tore holes in the chicken wire beneath the surface of the water, thereby permitting the fish to escape. Defendants claimed it was a simple and inexpensive matter to fix the trap; whereas plaintiffs claimed it was impracticable to repair it before the termination of the salmon run during which it was built to operate. Defendants maintained that plaintiffs failed to prove a substantial loss in fish which would probably have been caught had the trap not been injured.

A trial by jury resulted in a verdict for plaintiffs against defendants White, Clough and Ryan. The court entered judgment upon the verdict, and from the judgment defendants appeal.

No exceptions to the instructions given by the court were taken by appellants, nor were any exceptions taken to refusals by the court to give instructions proposed by appellants.

When the jury retired, the following special interrogatories were submitted to them:

"Interrogatory 'A': What average daily amount of fish, if any, do you find would have passed through the plaintiffs' fish trap on the five days following the accident? and what kinds?

"Answer............................................................

"Answer............................................................"

"Interrogatory 'B': What average daily amount of fish, if any, do you find would have entered this trap from October 5, 1929, to November 5, 1929? and what kinds?

"Answer............................................................

"Answer............................................................"

While appellants and their attorneys were absent, the jury sent word to the trial judge that it could not

answer the foregoing interrogatories, whereupon the court, without the consent of the attorneys, permitted the jury to return a verdict for respondents in the sum of two thousand five hundred dollars, without answering the interrogatories. Upon such action by the court, appellants predicate their first assignment of error.

It has been held that granting or refusing the submission of special interrogatories to the jury is entirely within the discretion of the trial court and cannot be reviewed. *Matthews v. Spokane,* 50 Wash. 107, 96 Pac. 827. That being the rule, it would follow that it was not error for the trial court to permit the jury to leave unanswered special verdicts which the court might have refused to submit.

Appellants' second, third, fourth and fifth assignments of error may be disposed of by considering the question of whether or not there was substantial evidence upon which the jury could return a verdict for respondents in the sum of two thousand five hundred dollars. We hold there was. Respondents introduced impressive testimony to show that purse seiners were catching large numbers of salmon just beyond the trap, from which testimony the jury would be warranted in believing that the salmon were escaping through holes in the chicken wire; and also that fish were numerous in the vicinity of the trap at the time of the damage.

Appellants make much of the fact that the testimony of Anthony Le Gaz, who testified that he fished with seines in the neighborhood of the spiller of the trap and caught many salmon, numbering as high as one thousand to twelve hundred on different days, during the period the trap was damaged, was contradicted by the testimony of the people to whom he claimed to have disposed of his fish. This court will not hold, as a mat-

ter of law, that a jury cannot believe a fisherman testifying as a witness simply because his story of what he did with his catch is contradicted.

Finding no error, the judgment is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and BEELER, JJ., concur.